FILED

JUN 1 5 2018

CLERK, U.S. DISTRICT COURT.
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| **MICHAEL PATRICK KENNEDY,**<br>**TDCJ No. 01358289,** | § § § | |
| Petitioner, | § § | |
| V. | § § | **SA-18-CV-00117-OLG** |
| **LORIE DAVIS, Director, Texas**<br>**Department of Criminal Justice,**<br>**Correctional Institutions Division,** | § § § § | |
| Respondent. | § § | |

## MEMORANDUM OPINION AND ORDER

Michael Kennedy, an inmate in the custody of the Texas Department of Criminal Justice-Correctional Institutions Division, has filed a counseled application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for attempted capital murder. (ECF No. 1). Petitioner has paid the filing fee in this matter. As required by Rule 4 of the Rules Governing Section 2254 Cases, the Court conducted a preliminary review of the petition. Having considered the Petition, the attached appendices, and the Memorandum in Support of Petition Under 28 U.S.C. § 2254 (ECF Nos. 1, 2, 4), Respondent's Answer (ECF No. 8), Petitioner's Reply (ECF No. 10), the record (ECF No. 7), and applicable law, the Court finds the petition should be **DENIED**. Petitioner is also denied a certificate of appealability.

## **Factual Background**

The Thirteenth Court of Appeals summarized the testimony presented at Petitioner's trial as follows:

> On the night of March 3, 2005, police officer Richard Kunz was patrolling Interstate 35 in Schertz, Texas, when he observed Kennedy's vehicle speeding. Kunz activated his emergency lights and pursued Kennedy. Kennedy eventually pulled over to the left shoulder in between the concrete median barrier and the left travel lane. Kunz exited his patrol unit and approached Kennedy. Kunz testified:
>
> > [W]hen I asked him for his driver's license and proof of insurance, I remember seeing his body kind of tilt a little bit to the left and his hand—or a motion that gave me an indication that his hand was going back there to the right, and typical of somebody who would be reaching for their driver's license and insurance and the wallet in the right backhand pocket. While waiting for that documentation is when I saw coming directly from the blackness the barrel of the gun pointed right at me.
>
> Kunz clarified that the gun was pointed at his "upper body." He stated that he thought he was going to die at that point. He "ran for [his] life" back to the patrol unit and called for backup. Kennedy opened his driver's side door and fired at the officer "numerous times" with what Kunz thought was a handgun. Kunz took cover behind his patrol unit. There was then a pause in the shooting, during which Kunz saw what appeared to be the barrel of a rifle "coming out of" Kennedy's driver's side door. He then heard gunshots and glass shattering around him as he crouched behind the patrol unit. He stated that the shots were "definitely [from a] machine gun because they were very rapid and they sounded a lot louder than just a handgun." Kunz, having already twice ordered Kennedy to drop his weapon, returned fire. He shot at Kennedy a total of sixteen times, firing until his service weapon was empty. Kunz testified:
>
> > At that point I stayed behind my vehicle, not firing and waiting for cover. I did not know where [Kennedy] was. I did not know if he was still in the vehicle. I did not know if I hit him. I did not know if he was coming around on the side concrete barrier wall and was going to pop up on the side and shoot me. I didn't even really know . . . if he was on the right side of my vehicle and was approaching. And I remained there until the first responding officer arrived.

Police closed off the portion of highway where the incident was occurring and approached Kennedy's vehicle from the opposite side of the concrete median barrier. The officers removed Kennedy, who had multiple gunshot wounds, from his vehicle and placed him under arrest.

Subsequent investigation showed that there were forty-five bullet holes in Kunz's patrol unit; Kennedy had fired at least ten rounds from a nine-millimeter handgun and at least thirty rounds from an AK-47 assault rifle. The handgun and rifle, along with other weapons and ammunition, were recovered from Kennedy's vehicle.

A video recording taken from a camera in Kunz's patrol unit was entered into evidence and played for the jury. On cross-examination, Kunz conceded that he did not tell dispatch or the backup officers that Kennedy had fired at him first. He did not recall Kennedy saying on the video "I have been hit" prior to the time he took cover behind his patrol unit. Kunz agreed that, according to the video recording, he had actually fired on Kennedy from the front of his patrol unit, prior to taking cover and calling for backup, but he did not mention this fact in a six-page written statement he prepared the day after the incident. Kunz agreed that a portion of his written statement was therefore "inaccurate." When asked by defense counsel what he did to correct this "inaccuracy," Kunz replied: "I did not alter my statement or change my report. I let them stand and let the evidence stand for those who wish to look at both and interpret what they believe to be accurate and true."

An acoustics expert and a forensic audio expert each testified on Kennedy's behalf that, according to their analyses of the video recording, Kunz fired the first shot. Dennis McKnight, who testified for the defense as an expert witness in the field of law enforcement, testified that, even if Kennedy displayed a gun when Kunz approached him, Kennedy presented no immediate threat to Kunz at the time Kunz took cover behind his patrol unit. McKnight opined that Kennedy's shooting at Kunz was justified as self-defense.

*Kennedy v. State*, No. 13-13-00416-CR, 2015 WL 3637917, at *1-2 (Tex. App.—Corpus Christi-Edinburg 2015, pet. ref'd).

## **Procedural Background**

Petitioner sustained gunshot wounds as a result of the incident of March 3, 2005, and was taken into custody upon his release from the hospital; Petitioner remained in custody prior to trial. (ECF No. 7-25 at 54). On March 8, 2005, law enforcement officers executed a search warrant on Petitioner's residence and seized various items, including several automatic weapons

and ammunition. (ECF No. 7-28 at 58). An information filed January 9, 2006, charged Petitioner

with aggravated assault of a peace officer; Petitioner waived indictment. (ECF No. 7-25 at 11,

13). Petitioner filed a motion to suppress the evidence seized under the warrant, a hearing was

conducted, and the motion was denied. *Kennedy v. State*, 338 S.W.3d 84, 87-88 (Tex.

App.—Austin 2011, no pet.).

> In 2006, Kennedy pleaded guilty to aggravated assault of a peace officer
> with a deadly weapon, a first-degree felony . . . The trial court accepted the plea,
> adjudicated Kennedy guilty, and sentenced him to seventy-five years'
> imprisonment. Kennedy appealed, contending that the trial court erred in denying
> a pre-trial motion to suppress evidence obtained from a police search of his
> residence. The Austin Court of Appeals held that Kennedy waived error by
> pleading guilty, but the court of criminal appeals reversed. *Kennedy v. State*, 297
> S.W.3d 338, 342 (Tex. Crim. App. 2009) . . . On remand, the Austin court held
> that the police search was unconstitutional and ordered a new trial.

*Kennedy*, 2015 WL 3637917, at *2 n.2.

Petitioner was subsequently re-indicted on one count of attempted capital murder and one

count of aggravated assault against a public servant. (ECF No. 7-39 at 64). Petitioner did not

testify at his second trial, which began June 10, 2013. (ECF No. 7-20 at 76). Petitioner was

represented at trial by Mr. Broden, Mr. Cantrell, and Mr. Moran. The defense asserted there was

insufficient evidence to find that Petitioner fired first, and argued Petitioner acted in self-defense.

(ECF No. 7-20 at 61-65). The jury received instructions on attempted capital murder, the lesser-

included offense of aggravated assault against a public servant, and self-defense. (ECF No. 7-20

at 29; ECF No. 7-46 at 7-14). The jury also received the following instruction:

> If a person attempting to claim self-defense provoked the other's use of
> unlawful force or attempted use of unlawful force, then such person is not entitled
> to rely upon self-defense unless the person, A, abandons the encounter or clearly
> communicates to the other his intent to do so reasonably believing he cannot
> safely abandon the encounter and, B, the other nevertheless continues or attempts
> to use unlawful force against the person.

4

(ECF No. 7-20 at 31-32).

The jury deliberated for approximately two hours and found Petitioner guilty of attempted capital murder. (ECF No. 7-39 at 66, 71). After a sentencing hearing, the jury was instructed to assess a sentence of at least five years and up to 99 years or life imprisonment, and assessed punishment at a term of 65 years' imprisonment. (ECF No. 7-21 at 34-35, ECF No. 7-46 at 16, 19).

Petitioner timely appealed his conviction and sentence, asserting trial court error and ineffective assistance of counsel. *Kennedy*, 2015 WL 3637917, at *1. The appellate court affirmed Petitioner's conviction and sentence, and the Court of Criminal Appeals denied a petition for discretionary review. *Id.*

Petitioner sought a state writ of habeas corpus, alleging discrete claims of ineffective assistance of counsel and an allegation of cumulative error. (ECF No. 7-37 at 6-26, 32). Petitioner also asserted two claims of prosecutorial misconduct and a claim of ineffective assistance of appellate counsel. (ECF No. 7-37 at 28-31, 34). Petitioner's trial counsel and the prosecutor filed affidavits in the state habeas matter. (ECF No. 7-46 at 111-17, 118-19). The state trial court, which was also the convicting court, made findings of fact and conclusions of law and recommended the writ be denied. (ECF No. 7-46 at 119-22). The Court of Criminal Appeals denied the writ without written order on May 3, 2017. (ECF No. 7-42).

In his federal habeas action, Petitioner asserts he was denied due process because the trial court "refused to define the term 'provocation' for the jury," and it improperly allowed the admission of his medical records. He also asserts he was denied the effective assistance of trial counsel, and that the State violated his right to due process because it did not allow Petitioner to

"defend himself in various ways . . ." (ECF No. 1 at 10). Petitioner asks the Court to vacate his conviction and order a new trial. (ECF No. 1 at 15).

Respondent allows the petition is timely and not successive, and that Petitioner exhausted his claims in the state courts. (ECF No. 8 at 6).

## Analysis

### I. Standard of Review

Petitioner's habeas petition is governed by the heightened standard of review provided by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified at 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court's findings of fact are presumed to be correct unless the petitioner can rebut the findings of fact through clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Valdez v. Cockrell*, 274 F.3d 941, 949 (5th Cir. 2001). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable," and not whether it was incorrect or erroneous.

*McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). As long as "fairminded jurists could disagree" on the correctness of the state court's decision, the state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## II. Merits

### A. Jury instruction

Petitioner argues he was denied due process because the trial court "refused to define the term 'provocation' for the jury." (ECF No. 1 at 5). Petitioner asserts this error violated his right to due process of law, arguing:

> Federal courts have found the failure to define terms with a commonly understood meaning does not constitute a due process violation. *See Woods v. Johnson*, 75 F.3d 1017, 1034 (5th Cir. 1966). Provocation is not a term with a commonly understood meaning. Moreover, a faulty jury instruction will constitute a violation of due process where the "instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Here, the meaning of provocation was so key to the correct outcome of the trial that the failure of the trial court to define the term violates due process.

(ECF No. 4 at 9 n.6).

A contested issue at trial was whether Petitioner or Officer Kunz fired first. The jury viewed the dashcam video of the incident, and heard defense experts' opine the dashcam video established that Officer Kunz fired first. (ECF No. 7-17 at 58-59; ECF No. 7-19 at 36, 51, 135). During the charge conference the State argued that, even if Officer Kunz fired first, he was provoked to do so when Petitioner brandished a weapon and, therefore, Petitioner could not legitimately claim he acted in self-defense. (ECF No. 7-20 at 7-20).

During the charge conference, defense counsel proposed the following instruction on provocation:

> Provocation is defined as, one, that the defendant did some act or used some words which provoked the act on him . . . Two, that such acts or words were reasonably calculated to provoke the attack, and, three, that the act was done or words were used for purpose and with the intent that the defendant would have a pretext for inflicting harm upon others.

(ECF No. 7-20 at 20-21). Defense counsel asserted there was no evidence that Petitioner acted with the necessary intent. *Id.* The trial court refused to give the instruction.

Petitioner raised this claim in his appeal, and relief was denied. The Court of Appeals held any error was harmless because "there was overwhelming evidence that [Kennedy] provoked the encounter." *Kennedy*, 2015 WL 3637917, at *9. The appellate court noted: "[T]he undisputed evidence showed that Kennedy fired forty-five rounds at Kunz, which strongly supports a conclusion that, by brandishing his weapon, Kennedy intended to establish a pretext to attack Kunz. Accordingly, even if the jury had been instructed in accordance with *Smith*,[1] it is overwhelmingly likely that it would have reached the same conclusion as to the self-defense issue." *Id.*

Improper jury instructions in state criminal trials do not generally form a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). The relevant inquiry on claims of improper jury instructions is not whether state law was violated, but whether there was prejudice of constitutional magnitude. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). Errors in jury instructions are subject to harmless-error analysis. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). Therefore, even if an instruction was erroneous or lacking, habeas corpus relief is not warranted unless the error "had substantial and

---

[1] Texas common law provides:

> A charge on provocation is required when there is sufficient evidence (1) that the defendant did some act or used some words which provoked the attack on him, (2) that such act or words were reasonably calculated to provoke the attack, and (3) that the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other.

*Smith v. State*, 965 S.W.2d 509, 513 (Tex. Crim. App. 1998).

injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623-24 (1993); *Galvan*, 293 F.3d at 764-65. "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). In a collateral proceeding, the question is not "whether the instruction is undesirable, erroneous, or even universally condemned," but "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (internal quotations omitted).

Petitioner does not cite to any United States Supreme Court opinion holding that the failure to give an instruction on provocation, when the defendant has asserted a claim of self-defense, violated the defendant's right to due process. *See Chester v. Thaler*, 666 F.3d 340, 345 (5th Cir. 2011) ("The first step in determining whether a state court unreasonably applied clearly established federal law is to identify the Supreme Court holding that the state court supposedly unreasonably applied."). It is not an unreasonable application of clearly established federal law for a state court to decline to apply a specific legal rule that has not been squarely established by the United States Supreme Court. *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009); *Sprouse v. Stephens*, 748 F.3d 609, 616 (5th Cir. 2014). Accordingly, the state court's denial of this claim was not contrary to or an unreasonable application of federal law, nor was the state court's determination that any error was harmless an unreasonable application of federal law. A thorough review of the trial transcript in this matter reveals that the failure to define the term "provocation" did not violate Petitioner's right to due process, as the factual issue of who fired first, the implications of that fact, and whether Petitioner provoked the altercation, were thoroughly presented and argued to the jury.

## B. Trial court error

Petitioner maintains the trial court violated his right to due process by allowing his medical records, which he asserts were obtained in violation of the Health Insurance Portability and Accountability Act ("HIPAA"), to be used introduced at his trial. (ECF No. 1 at 7).

The state appellate court denied relief on this claim. The court noted these records could be disclosed "for a law enforcement purpose . . . [p]ursuant to process and as otherwise required by law." *Kennedy*, 2015 WL 3637917, at *3-4. The court noted the HIPAA Privacy Rule allows disclosure of "'protected health information'" when required by a court order or court-ordered warrant, "'or a subpoena or summons issued by a judicial officer . . .'" *Id.* at *4 (quoting 45 C.F.R. § 164.512(f)(1)). The court found Petitioner's records were supplied pursuant to a properly-issued subpoena and held that, because the disclosure was authorized under HIPPAA's privacy rule, the trial court did not err in admitting the records. *Id.* at *5.

Petitioner has failed to conclusively establish that the admission of his medical records violated HIPAA, as HIPAA permits disclosure of protected health information in the course of any judicial proceeding under certain conditions. *See* 45 C.F.R. § 164.512(e). Furthermore, Petitioner fails to cite any law suggesting that a HIPAA violation may serve as a basis for habeas relief, let alone any clearly established federal law as determined by the Supreme Court of the United States. Accordingly, the state appellate court's denial of this claim was not contrary to or an unreasonable application of federal law.

## C. Ineffective assistance of trial counsel

Petitioner alleges he was denied his right to the effective assistance of trial counsel due to counsel's inadequate presentation of expert witnesses, and because counsel did not adequately prepare a defense character witness, Mr. Spears. Petitioner asserts his counsel, Mr. Cantrell, used the testimony of a defense expert, Mr. Bailey, to contradict the testimony of another defense expert, Mr. McKnight. Petitioner asserts counsel's error resulted in the presentation of two distinct defense theories: (1) that Officer Kunz misperceived Petitioner unbuckling his seat belt as Petitioner brandishing a weapon; (2) that Petitioner displayed a pistol and Officer Kunz misperceived the act as a deadly threat. (ECF No. 4 at 16-18). Petitioner asserts his "version" is that "he displayed his firearm to alert Kunz that firearms were in the vehicle, before Kunz could see the rifle and become alarmed . . ." (ECF No. 4 at 17). Petitioner raised these claims of ineffective assistance of counsel in his state habeas action and the claims were denied.

Sixth Amendment claims concerning the alleged ineffective assistance of counsel are evaluated under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a petitioner must demonstrate counsel's performance was deficient and this deficiency prejudiced his defense. *Id.* at 687-88, 690. When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Id.* at 687-89. Accordingly, there is a strong presumption that an alleged deficiency "falls within the wide range of reasonable professional assistance." *Id.* at 689. To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Id.* at 694. A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009). Conclusory statements of prejudice are insufficient to support a claim of ineffective assistance of counsel. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

Petitioner's counsel, Mr. Cantrell, filed an affidavit in the state habeas action addressing these claims:

> . . . The primary purpose of Mr. McKnight as an expert witness was to provide expert testimony regarding police procedure and whether it would have been proper for Officer Kunz to fire at Mr. Kennedy from a protected position. Mr. McKnight discussed a theory in which a retracting seatbelt rising rapidly could be mistaken as a gun. One can only speculate as to what Officer Kunz saw on the night of the incident, and Mr. McKnight's theory was only one of many possible theories, or as Mr. McKnight later testified, "a reasonable inference." A seatbelt from the same model of vehicle as Mr. Kennedy's was obtained from a salvage yard and brought to the meeting with Mr. McKnight and defense counsel, which included Mr. Broden.[2] A memorandum by Mr. Cantrell was also provided at this meeting which clearly outlines Mr. Kennedy's version of events based on notes from various meetings with Mr. Kennedy and on the video of the incident. It was simply trial strategy whether to present various plausible theories or to present a single theory. . . .

(ECF No. 7-46 at 111-12).

"[C]ounsel has wide latitude in deciding how best to represent a client . . ." *Yarborough v. Gentry*, 540 U.S. 1, 5-6, 8 (2003) ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect."). Counsel's choice of a defense and his strategy in arguing that defense to a jury are "virtually unchallengeable." *Strickland*, 466 U.S. at 690; *Trottie v. Stephens*, 720 F.3d 231, 243 (5th Cir. 2011) (holding the failure to present a particular line of argument is presumed to be the result of strategic choice). Petitioner has not met his "heavy burden" to overcome the

---

[2] Mr. Broden was lead counsel. Petitioner's ineffective assistance of counsel claims assert Mr. Cantrell's performance was deficient.

presumption that his counsel's conduct was strategically motivated and to refute the premise that counsel's actions are "strongly presumed to have fallen within the wide range of reasonable professional assistance." *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985). With regard to prejudice, it is unlikely that counsel's alleged error was prejudicial, as the evidence of Petitioner's guilt was substantial; the evidence established Petitioner fired at least 45 shots from two different weapons, one of them an AK-47, at Officer Kunz. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (noting the weight of the evidence of guilt in finding alleged deficient performance of counsel not prejudicial); *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008) (same).

With regard to the testimony of Dr. Bailey, in his affidavit defense counsel noted Dr. Bailey testified only at the punishment phase of the trial and, accordingly, any assertion that Dr. Bailey's testimony affected the outcome of Petitioner's trial on his guilt or innocence is incorrect. (ECF No. 7-46 at 112-13) ("The jury had already reached a guilty verdict before Dr. Bailey testified."). Furthermore, counsel averred:

> While there was a motion in limine granted prohibiting the introduction of Mr. Kennedy's mental state during the trial, this did not apply to the punishment phase. If anything, Dr. Bailey's testimony was the only mitigating evidence for Mr. Kennedy, since none of his relatives were willing to testify on Mr. Kennedy's behalf.

(ECF No. 7-46 at 113-14). Because Petitioner is unable to show that counsel's alleged error was prejudicial, i.e., that it affected the jury's determination of guilt and it is not likely it affected the jury's assessment of punishment, other than persuading the jury to impose less than the maximum sentence, the state court's conclusion with regard to this claim was not an unreasonable application of *Strickland*.

With regard to Mr. Spears,[3] Petitioner asserts Mr. Cantrell "failed to find the time to meet with Sgt. Spears in preparation for his testimony," asserting that Mr. Cantrell "passed" Mr. Spears in the corridor outside the courtroom, "exchanged social greetings," and then allowed Mr. Spears to testify without any preparation. (ECF No. 4 at 21). In his state habeas application, Petitioner alleged that "but for [Mr. Cantrell's] errors the proceedings would have been different. Cantrell's performance was ineffective and prejudicial and caused the outcome of the proceedings to be unreliable." (ECF No. 4 at 21).

Mr. Cantrell's affidavit in the state habeas action contradicts Petitioner's factual allegations regarding counsel's preparation of Mr. Spears' testimony:

> Defendant's assertion that Mr. Cantrell had not conferred with Donald Spears prior to his testimony is false. Counsel spoke with Mr. Spears on March 1, 2012 and again on April 18, 2012. Mr. Cantrell also conferred with Mr. Spears several days before trial. Mr. Spears was reluctant to testify because of his job in law enforcement and because he did not have any firsthand knowledge of the shooting. Mr. Cantrell advised Mr. Spears of the limited questions the defense would have for him and Mr. Spears agreed to testify voluntarily on Mr. Kennedy's behalf.

(ECF No. 7-46 at 114).

The state habeas trial court, which was also the convicting court, made findings of fact with regard to Petitioner's habeas application. The findings included the fact that Mr. Cantrell and the statements made in his affidavit were credible, (ECF No. 7-46 at 119), and that Petitioner "knowingly made false assertions in support of his Application . . ." (ECF No. 7-46 at 120). The court further found: "not only did Cantrell confer with Spears multiple times before trial, after conferring with Spears on April 18, 2012, Cantrell sent his legal assistant to brief Applicant on

---

[3] Mr. Spears, a police sergeant, was an acquaintance of Petitioner, who testified he had accompanied Petitioner to a recreational shooting range some years prior to the incident, and that it would not be uncommon for Petitioner to have multiple guns and ammunition in his possession for recreational purposes. (ECF No. 7-19 at 74-76).

their discussion the next day." (ECF No. 7-46 at 121). The trial court noted Petitioner's credibility was undermined by his assertion that Mr. Cantrell was "'mentally incapacitated by apparent chemical substance abuse," and that Mr. Cantrell "appear[ed] unkempt, disheveled, with glassy, vacantly staring eyes" and was incoherent at trial. (ECF No. 7-46). The court stated: "This Court in its own recollection of the trial never observed Mr. Cantrell under 'apparent chemical derangement.'" (ECF No. 7-46 at 21).

The state habeas court's factual determinations, including credibility findings, are entitled to a presumption of correctness unless they lack fair support in the record. *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990). *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013). The presumption afforded factual findings is even stronger when, as in this matter, the state habeas judge making the findings is also the convicting court. *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). In this matter, the habeas trial court's findings were not explicitly adopted by the Court of Criminal Appeals. Nonetheless, the trial court's findings of fact indicate the Court of Criminal Appeals' denial of relief was not an unreasonable application of *Strickland* or a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cf. Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning."). Petitioner's conclusory allegations are not "clear and convincing evidence" sufficient to overcome the presumption of correctness attributed to the state court's findings regarding counsel's credibility and competence. *See Miller*, 714 F.3d at 903.

Petitioner has not established counsel's performance was deficient with regard to Mr. Spears. Petitioner's claim is unsupported by the record, and he does not present independent evidence of the truth of his factual claims, such as an affidavit by Mr. Spears stating counsel did not prepare him to testify. Because Petitioner has not shown that counsel's performance was deficient and he makes only conclusory allegations of prejudice, the Court concludes the state court's denial of Petitioner's ineffective assistance of counsel claims was not an unreasonable application of *Strickland*.

### D. State interference

Petitioner asserts his right to due process was violated because the State did not "allow" him to "defend himself in various ways, including not allowing him to bring his legal material to court, not allowing him to have his reading glasses in court, not allowing him to have his pain medication, sleep deprivation during trial, confiscating his legal materials, and reading his attorney-client mail." (ECF No. 1 at 10). The totality of his argument in support of this claim is as follows:

> In Ground Ten of his state writ, Kennedy makes the argument that the State violated the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the U. S. Constitution by denying Kennedy his reading glasses during trial and his prescription medication, imposing sleep deprivation, confiscating his legal material and reading his attorney-client mail. The details of this argument are contained in Kennedy's state writ memorandum, which is incorporated herein.

(ECF No. 4 at 24).

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense,'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth

Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."). This right is generally invoked with regard to the presentation of evidence or theories of innocence at the defendant's trial. *See Nevada v. Jackson*, 569 U.S. 505, 509 (2013); *Kittelson v. Dretke*, 426 F.3d 306, 318-19 (5th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003); *Wade v. Mantello*, 333 F.3d 51, 57 (2d Cir. 2003).

In Petitioner's state habeas action he alleged his rights were violated because the State "hinder[ed]" his trial participation. (ECF No. 7- 46 at 75). He alleged the State withheld "his reading glasses during jury voir dire and his prescription medication during trial." (ECF No. 7-46 at 27, 65-76). Petitioner asserted he was prescribed "only inferior pain medication," and that he was not issued his pain medication during his trial and/or he was not allowed to take his prescription medications to the courthouse or to medicate himself at the courthouse. (ECF No. 7-46 at 66, 77). Petitioner asserted the resulting "severe continuous pain" kept him "from concentrating and thinking clearly and maintaining proper posture and demeanor," and that the State's "denial of [his] prescription pain medication at trial ultimately prevented him from testifying in his own defense." (ECF No. 7-46 at 68).[4] He argues that, because he did not testify, he was deprived of a complete defense and this resulted in an "unreliable trial outcome." *Id.* In support of this claim Petitioner cited *Washington v. Harper*, 494 U.S. 210 (1990) (finding no due process violation where a defendant was treated with antipsychotic drugs against his will, because he was found to be dangerous to himself or others and treatment was in his medical interest), and *Riggins v. Nevada*, 504 U.S. 127 (1992) (finding error to order a defendant be administered antipsychotic drugs during the course of trial over his objection, without findings

---

[4] Elsewhere in his state habeas action Petitioner alleged he was prevented him from testifying by the trial court's ruling that the evidence seized pursuant to the invalidated search warrant could be introduced if Petitioner testified, and because of his counsel's errors. (ECF No. 7-46 at 32-33, 35-36, 40-44).

that there were no less intrusive alternatives, that the medication was medically appropriate, and that it was essential for the sake of defendant's safety or the safety of others). (ECF No. 7-46 at 68-69). The cases cited by Petitioner hold that, to prevail on a claim that the State's action adversely affected the physical appearance of the defendant before the jury, the reviewing court must determine whether the alleged action denied the defendant a fair trial, and the defendant must show actual prejudice if seeking to have his conviction overturned. *See Riggins*, 504 U.S. at 155.

Petitioner further alleged in his state habeas action that the State confiscated and read his inbound and outbound legal correspondence and was "stealing his legal materials." (ECF No. 7-46 at 77). Mr. Cantrell stated in his state habeas affidavit that he filed a motion to permit Mr. Kennedy to carry legal papers to and from Court, "which was granted provided it did not interfere with jail policy." (ECF No. 7-46 at 115). He further stated: "Mr. Kennedy's claim that he was not permitted to carry legal materials, reading glasses, or trial preparation materials to court was never brought to Mr. Cantrell's attention during the trial," *id.*, and that "Mr. Kennedy never advised Mr. Cantrell of his need or desire for reading glasses. Mr. Cantrell always carries multiple sets of reading glasses and would have gladly loaned Mr. Kennedy a pair had this been requested." *Id.* The prosecutor, Ms. Kelly, provided an affidavit in the state habeas action. She indicated that "neither the State nor I requested, received, reviewed, or withheld any attorney-client correspondence of Mr. Kennedy's." (ECF No. 7-26 at 118).

Under the AEDPA's "contrary to" clause, Petitioner may be granted a writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or decided his case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). In conducting the "unreasonable application" inquiry, the Court considers "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. The state court's denial of this claim was not an unreasonable application of clearly established federal law, as Petitioner cites to no Supreme Court opinion holding that law enforcement's withholding of medication during trial violates a defendant's rights to a fair trial or due process; neither *Harper* nor *Riggins* are on point, as Petitioner was not medicated against his will. Furthermore, the state court's denial of this claim was not an unreasonable determination of the facts in light of the evidence presented in the state proceeding. Petitioner makes only conclusory allegations that the State confiscated his legal materials, or that he was denied his reading glasses or his pain medication, or that he was sleep deprived. He has not shown that he was in any way actually prejudiced by any of these alleged deprivations. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## Conclusion

Petitioner was not denied his right to due process by the trial court's failure to define provocation or the admission of his medical records. Petitioner was not denied his right to the effective assistance of counsel. Petitioner is not entitled to relief on his claim that the State interfered with his right to present a complete defense because he was deprived of his reading glasses and pain medication during trial, or that he did not have access to his legal materials during trial.

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, " the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal of the Petitioner's habeas petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

**IT IS THEREFORE ORDERED** that the Application for Writ of Habeas Corpus [ECF No. 1] is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.**

**SIGNED** on this ⅄ day of June, 2018.

ORLANDO L. GARCIA
**CHIEF UNITED STATES DISTRICT JUDGE**